## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANET LEE LANA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-07-232-D |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Janet Lee Lana, seeks judicial review of a denial of disability insurance benefits and supplemental security income benefits by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C).  It is recommended that the decision of the Commissioner be affirmed.

## I.    Agency Proceedings

Plaintiff filed an application for disability benefits on August 27, 2004, alleging an inability to work since June 4, 2004.  *See* Administrative Record [Doc. #13] (AR) at 40-43, 153-155.  Plaintiff's  application was denied initially and on reconsideration.  AR 16, 17, 156, 161.  Following a hearing, an Administrative Law Judge (ALJ) found that Plaintiff was not disabled.  AR 10-15.  The Appeals Council denied Plaintiff's request for review, AR 4-6, making the decision of the ALJ the final decision of the Commissioner.

## II.    The ALJ's Decision

The ALJ applied the five-step sequential evaluation process required by agency regulations.  *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920.  He first determined that Plaintiff had not engaged in substantial gainful activity during the relevant period.  AR 12.  At step two, the ALJ determined that Plaintiff suffers from the following severe impairment: rheumatoid arthritis.  AR 12.  At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations.  AR 13.  At step four, the ALJ made his residual functional capacity (RFC) determination finding Plaintiff has the capacity "to perform a light exertion, further restricted by occasional stooping and crouching and frequent climbing, balancing, kneeling and crawling."  AR 13.  The ALJ then determined that Plaintiff can perform her past relevant work as a telemarketer (work performed at the sedentary level) and, therefore, that Plaintiff was not disabled.  AR 15.

## III.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).  A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it.  *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004).  The court

considers whether the ALJ followed the applicable rules of law in weighing particular types

of evidence in disability cases, but the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner.  *Hackett*, 395 F.3d at 1172 (quotations and

citations omitted).

## IV.  Issues Considered on Appeal

Plaintiff brings two claims of error in this action.  Plaintiff first claims the

Commissioner's decision should be reversed because the ALJ improperly disregarded

Plaintiff's reported symptoms of pain and stiffness in her hands and arms.  Plaintiff

additionally claims the ALJ, without good cause, disregarded the opinion of a consultative

examiner that Plaintiff would not be able to hold a job.

## V.  Analysis

### A.  The ALJ's Pain Analysis

Plaintiff claims the ALJ improperly evaluated her subjective complaints of disabling

pain and specifically, her reported difficulties using her hands and arms for activities

requiring manipulation of objects.  *See* Plaintiff's Brief [Doc. #21] at 3.  Plaintiff testified,

with respect to her upper extremities, that her hands hurt and swell all the time, that she drops

everything, that she cannot open anything with her hands and that at times her hands and

wrists are so swollen she cannot make a fist.  AR 177.[1]  She testified that she cannot hold a

---

[1] In the course of Plaintiff's testimony, the ALJ observed that Plaintiff could almost make a fist with her left hand, but not with her right hand.  AR 177-178.

pencil for very long and can hardly drive because it hurts her wrists to hold the steering wheel. AR 180-181. Plaintiff testified she would not be able to return to her past work as a telemarketer because she would be in too much pain and would be dropping the phone all of the time. AR 179.[2]

The ALJ applied the familiar framework for evaluating pain allegations. *See Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir.1995). The ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but not to the degree of Plaintiff's testimony. AR 14.

The ALJ appropriately discussed what evidence led him to believe that Plaintiff's pain was not as severe as she alleged. The ALJ considered the objective medical evidence, Plaintiff's testimony and her daily activities,[3] use of medications, any side effects from the

---

[2]Plaintiff's past relevant work as a telemarketer – work performed at the sedentary level -- requires occasional reaching and handling and frequent fingering. AR 45 (Occupational Requirements, Telemarketer, DOT Code 299.357-014).

[3]The ALJ's findings as to Plaintiff's daily activities appear to be slightly exaggerated. The ALJ found Plaintiff's daily activities include cooking, light housework, laundry, writing, handling money, watching television, reading the paper and taking care of personal grooming. AR 14. At the hearing, Plaintiff testified very little about her daily activities. The ALJ instead relied on the Function Report completed by Plaintiff. AR 82-89. In that report, Plaintiff stated that she watches television, reads the paper and feeds the dog. AR 82-83. She stated that she must have help with buttons and zippers and with caring for her hair. AR 83. As for cooking, Plaintiff stated that she can get a bowl of cereal or a sandwich but does not do any cooking on the stove. AR 84. She can do some laundry but she must take pain pills and it takes her longer to do. AR 84. She also stated that she does not drive because she does not have good use of her left arm and her ankles swell frequently. AR 85. In addition, she stated she cannot write "because I'm left-handed and arthritis makes it difficult." AR 85. The ALJ's somewhat exaggerated findings with respect to Plaintiff's daily activities are not so significant – when viewed in the context of the credibility finding as a whole – as to deem his credibility finding otherwise unsupported by substantial evidence.

use of medications, and the frequency of medical contacts.  *See Kepler*, 68 F.3d at 391.[4]  The ALJ determined that the medical evidence and objective test results did not reveal disabling functional restrictions caused by pain.  AR 14.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence."  *Hackett*, 395 F.3d at 1173 (quotation omitted).  The ALJ's credibility findings regarding pain are closely and affirmatively linked to substantial evidence and are not merely conclusory, *see Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988), thus the Court must defer to those findings.  The record provides substantial evidence in support of the ALJ's determination that Plaintiff's upper extremity pain and discomfort was not disabling.

## 2.    The ALJ's Rejection of the Consultative Examiner's Opinion

Dr. Rachelle Davis, a consultative examiner, examined Plaintiff on November 13, 2004.  Upon examination of Plaintiff's upper extremities – the subject of Plaintiff's challenge here -- Dr. Davis made the following findings:

> The patient's bilateral wrists are noted to be significantly swollen, as well as her fingers. . . .  The patient's right wrist is significantly impaired with approximately 30 degrees in hinge motion.  The patient's flexion of her right and left thumb are both at 50 degrees on her left and 40 degrees on her right with significant edema. . . .

---

[4]For example, as discussed *infra*, the ALJ noted that Dr. Bell, a treating physician, reported that Plaintiff's treatment was sporadic and unrelated, for the most part, to her arthritis.

AR 107.  Dr. Davis further noted Plaintiff's recent surgery on her left elbow and limited mobility as a result of this surgery.  *Id.*[5]  Plaintiff ranked her joint pain and with respect to her upper extremities, stated that her left shoulder pain was the worst followed by pain in her right wrist.  *Id*.  Dr. Davis then concluded that Plaintiff was "[u]nable to hold a job."  *Id*.

In making the functional evaluation assessment, Dr Davis found that Plaintiff can effectively oppose the thumb to the finger tips, manipulate small objects, and effectively grasp tools such as a hammer.  AR 109.

The ALJ gave less weight to Dr. Davis' opinion because Dr. Davis is a non-treating physician.  *See* 20 C.F.R. §§  404.1427, 416.927 (addressing weight given to treating physician opinions and proper analysis of other medical opinion evidence).  The ALJ found that records from Plaintiff's treating physicians did not contain restrictions or limitations greater than those reflected in the ALJ's opinion and, therefore, that he was giving greater weight to the treating physicians records.  AR 14.

The records from Plaintiff's treating physicians include treatment for a period of almost two years following the consultative examination by Dr. Davis.  Those records reference swelling in Plaintiff's fingers, hands and wrists, and her constant complaints of pain.  AR 121-127, 146-152.[6]  In addition, the records reference that Plaintiff was being provided a form to complete for handicapped parking, that Plaintiff had fallen off her porch

---

[5]The surgery was precipitated by Plaintiff falling off of her porch and fracturing her elbow. AR 106, 123.

[6]As the ALJ noted, however, "[o]n March 23, 2005, it was recommended that the claimant take therapy for rheumatoid arthritis but she declined."  AR 14; *see also* AR 151.

and that she reported dropping things due to swelling in her hands.  AR 122, 123, 126. Although the treatment records do not include an assessment of Plaintiff's functional abilities, they do not otherwise indicate that Plaintiff is limited to the degree found by Dr. Davis.

In addition, as the ALJ noted, Dr. Bell, a treating physician who treated Plaintiff from March 2003 through July 2004, reported that Plaintiff saw him sporadically for conditions including uncomplicated bronchitis, antalgic gait and subacute sinusitis.  AR 104.  During a visit in approximately August 2003, Dr. Bell suggested treatment for acute bursitis but Dr. Bell states that "[t]he next two visits in sequence were for uncomplicated subacute sinusitis" and that "[t]he former bursitis was not mentioned with these visits."  *Id.*  Dr. Bell then reported that he did not see Plaintiff again for another year until July 2004 and again, rendered treatment for acute sinusitis.  *Id.*  He noted that Plaintiff's care had been transferred to a Medicaid clinic and that Plaintiff had been placed on NSAID[7] therapy for what he interpreted as being tenosynovitis of the right index and middle fingers.  *Id.*  The record contains no further treatment of Plaintiff by Dr. Bell.

 The ALJ further relied on the residual functional capacity determinations made by the state agency consultants, Drs. Woodcock and Fiegel.  Dr. Fiegel, referencing the examination conducted by Dr. Davis, determined: "[c]urrent exam shows she [h]as swelling in her wrists and fingers but she can fine and gross manipulate."  AR 115.  Dr. Fiegel also noted Plaintiff's decreased range of motion in her wrists.  *Id.*  However, Dr. Fiegel concluded

---

[7]Nonsteroidal anti-inflammatory drugs.

that Plaintiff had no manipulative limitations, *see* AR 116.  This conclusion is supported by

Dr. Davis' findings.  AR 109.  Dr. Woodcock concurred with these findings.  AR 120.[8]

Plaintiff contends the ALJ erred in rejecting Dr. Davis' opinion because no other

opinion regarding Plaintiff's functional capacity exists in the record.  *See* Plaintiff's Brief at

18 ("It would seem self-evident that Dr. Davis' opinion cannot be outweighed by another

opinion when that other opinion does not exist.").  Plaintiff appears to argue that the ALJ

legally erred by relying on the absence of evidence to reach his disability determination.  *See*

*Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993).  To the contrary, however, the

ALJ relied on the residual functional capacity determination of the state agency consultants,

Drs. Fiegel and Woodcock, as well as the treatment records of Plaintiff's treating physicians.

The record contains substantial evidence on which the ALJ could rely to conclude either that

Plaintiff has upper extremity limitations precluding work, or that Plaintiff's functioning is

not so impaired as to preclude work.  This Court may not reweigh the evidence but is limited

to determining whether substantial evidence supports the Commissioner's decision.  Here the

relevant evidence is such that "a reasonable mind might accept [it] as adequate to support a

conclusion."  *Doyal*, 331 F.3d at 760.  The ALJ's decision is neither "overwhelmed by other

evidence in the record" nor is it supported by a "mere scintilla of evidence."  *Branum*, 385

F.3d at 1270.  Therefore, the decision of the Commissioner should be affirmed.

---

[8]The state agency consultants opined Plaintiff had the residual functional capacity for light work.  *See* 20 C.F.R. § 404.1567(b).  As previously noted, Plaintiff's past relevant work as a telemarketer is work performed at the sedentary level.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any such objections must be filed with the Clerk of the District Court by July __7th__, 2008.  *See* LCvR72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __17th__ day of June, 2008.

_____

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE